[No. 20721.    Department Two.    November 23, 1927.]

THE STATE OF WASHINGTON, *on the Relation of White Pine Sash Company*, *Plaintiff*, v. THE SUPERIOR COURT FOR FERRY COUNTY *et al.*, *Respondents*.[1]

[1] ACTIONS (25)—SPLITTING CAUSE OF ACTION—IN CONDEMNATION PROCEEDINGS. The rule against splitting causes of action, not being strictly applied except in actions on contract. or tort, will not be enforced in condemnation proceedings where to enforce it would work an evident injustice.

[2] EMINENT DOMAIN (3)—NATURE OF POWER—CONSTITUTIONAL PROVISIONS. While an eminent domain proceeding is *sui generis*, under our constitution providing that the question of public use is a judicial question, and that no property shall be taken until compensation is "paid into court," the proceedings will be assimilated to the practice prevailing in equity, rather than at law, when legal rules would work an injustice.

[3] ACTIONS (25)—EMINENT DOMAIN (106)—PROCEEDINGS—DEFENSES —SPLITTING CAUSES OF ACTION. Objection to the splitting of causes of action by a second condemnation proceeding against the same owner, is not available, notwithstanding a finding that relator knew, when the first suit was started, that it would require the additional land, where the court also found that the second suit involved many additional tracts which were found not to be necessary, and it must be presumed that it was not necessary to include them in the first suit.

Certiorari to review a judgment of the superior court for Ferry county, Neal, J., entered May 27, 1927, adjudging a public use and necessity for condemning a private way of necessity, upon a trial to the court. Affirmed.

*Alex M. Winston*, for relator.

*Davis, Heil & Davis*, for respondents.

FULLERTON, J.—The respondent, Hedlund Lumber & Manufacturing Company, is engaged in the sawmill

[1] Reported in 261 Pac. 110.

and lumber business, its manufacturing plant being located in or near the city of Spokane. It purchased from the government of the United States a large body of standing timber, lying in two separate tracts on the easterly portion of what was formerly the Colville Indian Reservation. To remove the timber from its place of location to its manufacturing plant, the respondent conceived it necessary to construct a logging railroad from a spur on the Marcus branch of the Great Northern Railway southerly for a distance of about twenty miles. In a prior condemnation proceeding, it had acquired a private way of necessity for the construction of a logging railway over a part of the distance, and in this proceeding it seeks to acquire a right of way for the extension of its road over a part of the remainder.

The relator, White Pine Sash Company, is the owner of the land involved in the earlier proceeding, and is also the owner of the land involved in the present proceeding. On its appearance in the present proceeding, by way of answer to the application of the respondent for an order of necessity, it set up, among other things, the earlier proceedings, and alleged

"  .   .   .   that the contemplated improvement   .   . . for a logging railroad is the same improvement contemplated and set forth in"
the earlier proceeding, and that the respondent

"  .   .   .   is endeavoring to split its cause of action against" the relator, "for which reason no order of necessity may be entered herein."

On the hearing, the trial court held that the former proceeding did not estop the respondent from maintaining the present proceeding, and entered an order granting to it a private way of necessity through the lands of the relator.

19—145 WASH.

Among others, the trial court made the following findings:

"The court further finds that the right of way herein sought to be condemned through Indian allotment to Joseph St. Paul, in section 34, township 36, North Range 37, E. W. M., is necessary to be condemned, in any event, for the purpose of the extension of the main line of the logging railroad described in the petition herein and that, at the time the petitioner filed its petition in cause number 2195 in this court, wherein the petitioner herein was petitioner and wherein the respondents herein were respondents, the petitioner well knew that said right of way through said Indian Allotment to Joseph St. Paul in section 34, township 36, North Range 37, E. W. M., was necessary to be acquired for the removal of the tract of timber known as the Twin Lakes Unit and that petitioner well knew that no other feasible method for removal of the timber from said Twin Lakes Unit, save by the acquisition of said right of way through said Indian Allotment, which is a continuation of and adjoins the right of way sought in said former action to be condemned through the NE¼ of NW¼ of section 34, Township 36 North Range 37 E. W. M., existed."

In explanation of the finding, it may be said that the Indian allotment to Joseph St. Paul is but one of a number of the different tracts of land described in the respondent's petition to condemn, and was used by the court as a convenient means of reference to it; it is now, and was at the time the first condemnation proceeding was instituted, the property of the relator. The "Twin Lakes Unit" is one of the timber tracts purchased by the respondent from the government.

In this court, the relator urges but a single question. It contends that the respondent has divided its cause of action into parts, and, having brought an action upon one of the parts, cannot now maintain an action upon the other.

[1]   The rule that a party may not split a single cause of action is well settled in law.  It has its foundation in the principle that it avoids a multiplicity of suits, and thus protects the defendant against unnecessary vexation, and avoids the costs and expenses incident to numerous actions.  This court has heretofore recognized the rule; some of the cases so doing being the following: *Achey v. Creech,* 21 Wash. 319, 58 Pac. 208; *Kline v. Stein,* 46 Wash. 546, 90 Pac. 1041; *Collins v. Gleason,* 47 Wash. 62, 91 Pac. 566; *Brechlin v. Night Hawk Mining Co.,* 49 Wash. 198, 94 Pac. 928; *Davis v. Hibbs,* 73 Wash. 315, 131 Pac. 1135; *Brice v. Starr,* 90 Wash. 369, 156 Pac. 12; 93 Wash. 501, 161 Pac. 347.; *Kinsey v. Duteau,* 126 Wash. 330, 218 Pac. 230; *Jansen v. Kolmitz,* 130 Wash. 314, 226 Pac. 1025.

But, while the rule against splitting causes of action is applied with some strictness in actions arising upon contract or upon tort, it is not enforced with the same rigidity in actions of equitable cognizance, or actions not clearly falling within its application.  The rule is intended primarily for the benefit and protection of the defendant, and instances arise where its non-enforcement will work no particular embarrassment to him, and where its enforcement may cause serious loss and damage to the plaintiff.  In such instances, if the action be of equitable cognizance, the court will inquire into the respective rights of the parties, the effect the enforcement or non-enforcement of the rule will have upon such rights, and will enforce or refuse to enforce it as the evident justice of the particular case requires.

[2]   Strictly speaking, a proceeding to condemn land, either for a public use or for a private way of necessity, is not an action at law or a suit in equity as those terms are commonly understood.  In its nature, it is a proceeding *sui generis*.  The right is to be exercised as the statute prescribes it shall be exercised;

and in the absence of constitutional restrictions, it has been held that the intervention of a court is not necessary to its exercise. Since our constitution prescribes that, whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public, and since that instrument further provides that no private property shall be taken or damaged, and no right of way shall be appropriated for the use of any corporation until full compensation therefor be first ascertained and "paid into court for the owner," it is possible that no procedure for the condemnation of private property would be recognized in this state unless it contemplated a proceeding in the courts.

But it is not the rule that the statute prescribing the procedure is to be construed with such strictness as to defeat its purpose and intent. Nor will the courts apply to it the rules applicable to actions on contract or tort, when the application will work an injustice to one or the other of the parties thereto. It will rather assimilate to it the practice prevailing in actions of equitable cognizance.

Applying these principles to the facts of the case now before us, we do not think the relator can be heard to complain that there has been a splitting of a cause of action. By the terms of the statute, the expenses of the proceeding, both those of the applicant for the way and those of the owner of the property, must be borne by the applicant, and the owner suffers only from the inconvenience of having to appear a second time in a proceeding which, if properly instituted, he would have been required to appear but once.

[3] Furthermore, an examination of the petition shows that there were numerous other tracts included

in the petition to condemn, across which the trial court does not find, and which it expressly refused to find, that the applicant knew it would require a right of way at the time it instituted the first proceeding. The evidence taken at the hearing is not before us, and we must presume from the record that there was no necessity for including these other tracts in the first petition. The relator was, therefore, properly made to appear twice in the proceeding, taking it as a whole, and it is difficult to see how it has suffered any special injury merely because the applicant has included in its second application a tract of land which it might have included in the first. On the other side, it is easy to see that the applicant may suffer an irremediable loss if it may not condemn. Whether it can or cannot carry on its enterprise may depend upon the will of the relator.

Our conclusion is that the equities of the case are with the applicant, and that the trial court was justified in granting to it the relief awarded.

MACKINTOSH, C. J., HOLCOMB, MAIN, and ASKREN, JJ., concur.